HOOD, Judge
(dissenting).
I believe that the judgment appealed from should be reversed and that the case should be remanded to the trial court with instructions to appoint a handwriting expert, as requested by defendant Dixie Auto Insurance Company.
The principal question presented is whether the insured, Joseph A. Guillory (also known as Alfie Ray Guillory), signed the letter dated March 29, 1975, addressed to Dixie Auto Insurance Company, instructing that insurer to cancel the policy which is at issue here. Guillory said he didn’t sign it. The evidence convinces me that he did. All parties agree that the judgment of the trial court should be reversed if Guillory, in fact, signed that letter.
During the trial, defendant Dixie requested that the court appoint a handwriting expert to examine the letter, and to compare it with other documents in the record containing the signatures of Guillo-ry, and to make a report of his findings to the court. Dixie offered to bear all of the expenses incurred in obtaining the opinion of the handwriting expert. The trial judge refused that request. He assigned as his sole reason for doing so that Dixie was aware of the defense in advance of trial and that it waited until near the close of the trial to make the request. The trial judge conceded that it had the power to appoint such an expert, even without a request, but that “this addresses itself to the discretion of the court.” I think the trial judge abused his discretion in refusing to grant Dixie’s request. A number of circumstances compel me to arrive at that conclusion.
In the first place, the appointment of the expert would not have delayed the completion of the trial. The trial of the case began on May 20, 1976, and it was on that date that Dixie requested the appointment of the expert. Prior to the submission of that request, the court announced that the trial would be held open for ten days in order to enable the parties to obtain a document to file in evidence and to propound additional questions to one witness. The court thus had already determined that the trial would be continued for other reasons. Actually, the trial was delayed more than five weeks, until July 26, 1976, at which time additional evidence was presented. The opinion of the handwriting expert certainly could have been obtained within that period of time, and there thus would have been no delay in disposing of the case.
Second, it is apparent that a fraud either is or is not being perpetrated on Dixie and on this court. The means of resolving that question fairly and finally is available to the court, at no expense to anyone except the party which requests that we use it I think this court should do what appears to me to be plainly necessary to see that the matter is resolved justly to all parties. My view is that the trial court should have appointed a handwriting expert ex proprio motu, even if a request to that effect had not been made. Since the trial court did not do so, we should remand the case with instructions that that be done.
Third, I think the evidence is overwhelming that the letter requesting cancellation of the policy was signed by Guillory. The trial judge, after refusing to allow a handwriting expert to examine the available documents and to testify, undertook to compare the signatures appearing on some documents in the record and to determine from that comparison whether Guillory actually signed the letter. It is apparent from his written reasons for judgment that the judge experienced considerable difficulty in distinguishing the signatures. He eventually concluded that defendant had signed two documents (D-ll and D-13), and that he had not signed two others (D-l and D-8, the latter being the letter requesting cancellation). My examination of these signatures convinces me that all of those documents were signed by the same person. I concede that I am not a handwriting expert, but I feel that there at least is some basis for my views, and that the opinion of a handwriting expert is needed. The trial judge found a “break” between two letters, and a different “configuration” of an “R” in two of the signatures, and on the basis of that finding he determined that Guillory *457 did not sign the letter. It is significant, I think, that the document marked D-l, being one of the documents which the trial judge found was not signed by Guillory, was the application made by Guillory for the insurance policy which is at issue here. W. J. Fruge, the insurance agent or broker who joins Guillory in contending here that the policy was valid and had not been can-celled, also signed the same application. As far as I can determine, neither Fruge nor Guillory question the latter’s signature to Exhibit D-l, and I feel that the trial judge and my colleagues have erred seriously in finding that Guillory did not sign that application. As already noted, the trial judge based his conclusion that Guillory had not signed the letter almost entirely on his finding that the signatures on D-l and D-8 appeared to be the same, and that Guillory had not signed D-l, the above application.
Fourth, the circumstances show that Guillory requested cancellation of the policy. The letter requesting the cancellation was received by Dixie, and Dixie promptly sent out notices of the cancellation, long before the accident occurred. A check was issued to the agent or broker, Fruge, on May 14, 1975, for the amount of the unearned premium on the policy, and that check was mailed to Fruge. Fruge testified at first that he did not receive that refund check until about 45 days after the accident. Later, however, when he was confronted with the original check which showed that he deposited it to his account on May 23, 1975, he conceded that he received the refund check almost a month before the accident occurred. The check showed plainly on its face that the policy had been can-celled. There can be no question, therefore, but that Fruge knew that the policy was cancelled long before the accident occurred, despite the contrary position he took at the trial.
Fifth, my colleagues concede that there is a “mysterious cloud surrounding the circumstances.” They state, however, that they “cannot afford ourselves the luxury of speculation in finding manifest error on the part of the district judge.” I feel differently. I think we should Insist on the luxury of determining the truth.
It seems to me that the trial judge erred seriously in finding that the policy had not been cancelled. There at least is a serious question, however, as to whether the signature of Guillory was forged on the letter. I feel that in view of the “mysterious cloud” which surrounds the circumstances here, the majority should reverse and remand the case with instructions that a handwriting expert be appointed, at Dixie’s expense, to examine the available documents and report to the court.
For these reasons, I respectfully dissent.